**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**EDWARD LEE CARTER**                                                     **PETITIONER**
**ADC #109307**

**VS.**                          **CASE NO.: 5:10CV00256 JLH/BD**

**RAY HOBBS, Director,**                                                 **RESPONDENT**
**Arkansas Department of Correction**

**RECOMMENDED DISPOSITION**

**I**.        **Procedure for Filing Objections:**

The following Recommended Disposition ("Recommendation") has been sent to

United States District Chief Judge J. Leon Holmes.  Mr. Carter – or any party – may file

written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United

States District Court Clerk within fourteen (14) days of this Recommendation.  A copy

will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    **Introduction**:

Edward Lee Carter, an inmate in the Arkansas Department of Correction, filed this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2), challenging his conviction and sentence.  Mr. Carter has since filed an Amended Petition (#18), a Second Amended Petition (#22), and a Third Amended Petition.  (#33)  Respondent Ray Hobbs has responded to each petition.  (#9, #19, #24, and #34)  Mr. Carter replied to Director Hobbs's last response.  (#35)  For reasons that follow, Mr. Carter's petition for writ of habeas corpus should be DENIED and his case DISMISSED, with prejudice.

## III.    **Background**:

Mr. Carter and Jessica Brewer were shopping at a Wal-Mart in Hot Springs, Arkansas.  *Carter v. State*,  2009 WL 3384382, *1 (Ark.App., Oct. 21, 2009).  Salli Redding and Shannon Smith were shopping nearby.  According to the trial testimony of both Ms. Brewer and Ms. Redding, Mr. Carter placed video games, CDs, or DVDs from Ms. Brewer's cart into the front of his pants before leaving the store. (19-2, p. 13, 31)

Ms. Redding and Ms. Smith followed Mr. Carter and Ms. Brewer outside the store, where Ms. Redding confronted Mr. Carter about the stolen merchandise.  Ms. Redding

testified that Mr. Carter then pulled a gun from his pocket and pointed it at her.  (#19-2, p. 14)

Ms. Brewer testified that she saw Mr. Carter pull a gun, but did not see him point it at Ms. Redding.  (#19-2, p. 31, 33)  Ms. Smith saw Mr. Carter with a gun, but also did not see him point the gun at Ms. Redding.  (#19-2, p. 20-21)

Kenneth Thacker had given Mr. Carter and Ms. Brewer a ride to Wal-Mart that day.  (#19-2, p. 26)  After the confrontation with Ms. Redding, Mr. Carter and Ms. Brewer walked to Mr. Thacker's car.  After getting in the car, Mr. Carter reached across Mr. Thacker to start the car and said, "get the hell out of here."  (#19-2, p. 27)  At that point, Mr. Thacker saw two women and a man walking toward the car, yelling.[1]  Mr. Thacker refused to drive away, so Mr. Carter and Ms. Brewer got out of the car and fled on foot.  Mr. Thacker remained at Wal-Mart until police arrived.  Upon searching Mr. Thacker's car, police found a BB gun that was later identified as the gun Mr. Carter had in his possession.  (#19-2, p. 28)

As a result of his actions, Mr. Carter received a thirty-year sentence for aggravated robbery based, in part, on his status as a habitual offender.  He argued in his original petition that, at most, he was guilty of shoplifting and terroristic threatening, but that he was not guilty of aggravated robbery.  (#2, p. 3-4)  In his latest petition, Mr. Carter asked

---

[1] The man with Ms. Redding and Ms. Smith was Wal-Mart employee Randal Nichols.  (#19-2, p. 16)

3

the Court to modify his sentence to "reflect the actual crime committed."  (#33, p. 1)  It is

unclear what "actual crime" Mr. Carter believes he should be sentenced for, however,

because he squarely denies stealing merchandise or pointing a gun at Ms. Redding.  (#33,

p. 1, 4, 8-10)

## IV.    <u>Standard of Review</u>:

Federal courts provide a limited review of claims adjudicated in state court.

"When a claim has been adjudicated on the merits in state court, habeas relief is

warranted only if the state court proceeding resulted in: (1) a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court; or (2) a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding." *Bucklew v. Luebbers*, 436 F.3d 1010, 1015 (8th Cir. 2006) (quoting 28

U.S.C. § 2254(d)(1) and (2)); see also *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct.

2456, 2462 (2005).

A state court decision is "contrary to" federal law if the state court "arrives at a

conclusion opposite to that reached by the [United States Supreme] Court on a question of

law or if the state court decides a case differently than the [United States Supreme] Court

has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362,

412-13, 120 S.Ct. 1495 (2000).

A decision is "an unreasonable application" of federal law "if the state court identifies the correct governing legal principle from the [United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  It is not enough for a federal court to conclude that the state court should have applied the law differently.  Rather, the state court's application of federal law must have been objectively unreasonable before a federal court can grant habeas relief.  *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006)

Also, in a federal habeas corpus proceeding, a state court's factual findings are entitled to a presumption of correctness, absent procedural error.  Those findings may be set aside "only if they are not fairly supported by the record."  *Nicklasson v. Roper*, 491 F.3d 830, 841 (8th Cir. 2007)(quoting *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769 (1995)).

## V.  <u>Discussion</u>:

In his petitions, Mr. Carter raises several claims of ineffective assistance of counsel.  He alleges that his trial lawyer failed to interview or call witnesses (#33 p. 2-8); failed to obtain or submit Wal-Mart surveillance videos (#33, p. 8-10); and failed to challenge racially biased jury selection.  (#33, p. 10)  Mr. Carter also argues cumulative error by his trial counsel.  (#33, p. 10-13)  Finally, Mr. Carter claims actual and factual innocence.  (#33, p. 2, 13-16)

A.    *Ineffective Assistance of Counsel Claims*

In his Rule 37 petition filed with the trial court, Mr. Carter raised the first three

claims of ineffective assistance of counsel that he brings in this petition.  (#2, p. 15-16;

#19-4, p. 36-42, 50-59)  The trial court denied Mr. Carter's Rule 37 petition without a

hearing.  Mr. Carter appealed, but the Arkansas Supreme Court dismissed the appeal,

finding that Mr. Carter could not prevail.  *Carter v. State*, 2010 Ark. 231 (Ark. 2010).

Applying the standard set forth by the United States Supreme Court in *Strickland*

*v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984), the Arkansas Supreme Court found

that: (1) Mr. Carter had failed to demonstrate prejudice resulting from his counsel's

performance; (2) several of Mr. Carter's arguments relied on an incorrect statement of

Arkansas law; (3) counsel had used reasonable, professional judgment in his defense

strategy by relying, in part, on the absence of video evidence; and (4) Mr. Carter's claim

that jury selection was tainted by racial considerations was conclusory and unsupported.

*Carter*, 2010 Ark. 231.

1. *Failure to Interview or Call Witnesses*

In support of the claim that his lawyer's performance was constitutionally

deficient, Mr. Carter complains that his lawyer should have interviewed Randal Nichols, a

Wal-Mart employee and state witness.[2]  (#33, p. 3)  Mr. Carter also complains that his

lawyer should have called employees of FYE, the store where, according to Ms. Brewer's

---

[2] Although listed as a state witness, Mr. Nichols did not testify at trial.

testimony, Mr. Carter sold the stolen Wal-Mart merchandise.  Mr. Carter argues that the testimony of these witnesses would have demonstrated that no theft occurred.  His argument is flawed.

As the Arkansas Supreme Court noted, Arkansas law does not require a completed theft as support for an aggravated robbery conviction – only the purpose to do so, coupled with the threat of force.  *Carter*, 2010 Ark. 231.  "A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person."  ARK. CODE ANN. § 5-12-102(a).  Aggravated robbery occurs when a person commits robbery and represents that he is armed with a deadly weapon.  ARK. CODE ANN. § 5-12-103(a)(2).

He also argues that if these witnesses had been called to testify, their testimony would have demonstrated that he did not steal anything from Ms. Redding, so she was not the victim of aggravated robbery.  (#33, p. 5)  Whether Mr. Carter stole from Ms. Redding, however, is beside the point.  Robbery in Arkansas does not require that the victim be deprived of property.  *Harris v. State*, 308 Ark. 150, 153, 823 S.W.2d 860 (Ark. 1992).  The emphasis is not the taking of property, but the threat of physical harm.  *Id*.

Mr. Carter's claim relies on an incorrect understanding of law, but regardless, he has provided nothing more than speculation as to these proposed witnesses' testimony.

There is nothing to indicate that any FYE employee or Mr. Nichols had information about Mr. Carter's placing merchandise in his pants. Two witnesses, however, claimed to have seen Mr. Carter put the goods in his pants, and they testified to this at trial. (#19-2, p. 13, 31)

Likewise, there is no indication that any FYE employee or Mr. Nichols would have been able to testify that Mr. Carter did not have a gun when he confronted Ms. Redding in the Wal-Mart parking lot. At most, Mr. Nichols and the FYE employee could have testified that they did not see Mr. Carter with a gun. Apparently, the only relevant act Mr. Nichols witnessed was Mr. Carter fleeing. (#19-2, p. 13-14, 16-17, 21) In any event, three people testified at trial that they saw Mr. Carter with a gun. (#19-2, p. 14, 20-21, 31, 33, 35)

If Mr. Carter did not steal anything or threaten Ms. Redding, why did he flee the scene? Why not remain at Wal-Mart with Mr. Thacker to resolve the misunderstanding? Mr. Carter does not answer these questions. Instead, he makes the unsupported claim that witnesses his counsel failed to call would have proved his innocence. Habeas relief cannot be based on bare speculation about testimony of witnesses who were not called. See *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989)(appellant who produced no affidavit from a witness or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness), cert. denied, 493 U.S. 898, 110 S.Ct. 252 (1989).

8

2.  *Wal-Mart Surveillance Videos*

Mr. Carter also complains that his lawyer was ineffective for failing to obtain or offer into evidence Wal-Mart surveillance videos.  (#33, p. 8-10)   The Arkansas Supreme Court found that Mr. Carter's counsel used reasonable, professional judgment in his defense strategy, which relied in part on the absence of video evidence.  *Carter*, 2010 Ark. 231.  This decision was not contrary to, or an unreasonable application of, clearly established Federal law.

Mr. Carter argues that video evidence would have shown that parts of Ms. Brewer's testimony was not true.  He states that video would have shown that he and Ms. Brewer entered Wal-Mart at different times, instead of at the same time, as Ms. Brewer testified, and that they left Wal-Mart at the same time, instead of twenty feet apart, as Ms. Brewer testified.  These minor differences are of no consequence.

Mr. Carter also states that the video would not show him shoplifting.  This is exactly what Officer Brad Haywood testified to at trial – that the video did not show any shoplifting.  (#19-2, p. 24-25)

Mr. Carter alleges the video would show he did not point a gun at Ms. Redding. Ms. Redding testified that Mr. Carter pointed a gun at her stomach.  (#19-2, p. 14, 17-18) Ms. Smith testified that she saw Mr. Carter with a gun, but did not see him pull it out or point it.  (#19-2, p. 20-21)  Ms. Brewer testified that Mr. Carter did not point the gun at Ms. Redding, but rather only pulled and cocked the gun.  (#19-2, p. 31)  The video of the

parking lot, if there is a video showing the incident with Ms. Redding, might have resolved this conflicting testimony.  But it is fancy to conclude that a video would have changed the outcome of the trial.

To commit aggravated robbery, Mr Carter did not even have to possess a gun. Merely representing that he was armed with a deadly weapon would have sufficed.[3]  ARK. CODE ANN. § 5-12-103(a)(2).  The overwhelming weight of evidence available to this Court shows that Mr. Carter possessed a gun, and at the least, flashed it.  Mr. Carter does not claim he did not brandish a gun.  He argues only that a parking lot video – that might or might not exist –  would show he did not point the gun at Ms. Redding.  (#33, p. 8-10) Brandishing a gun in a threatening manner, however, is sufficient to support an aggravated robbery conviction.

Considering the testimony and Arkansas law, Mr. Carter has not proved deficient performance or prejudice from his counsel's strategic decision to rely on a lack of video evidence as part of his defense.  "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006)(citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052); *Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006).  Stated another way, "[t]he Sixth Amendment

---

[3] Mr. Carter did not, in fact, possess a "deadly weapon."  Instead, he had a BB gun that resembled a Glock 9-millimeter or .45-caliber handgun.  (#19-2, p. 14, 20, 24, 28)

guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1 (2003).

### 3. *Jury Selection*

In all criminal prosecutions, the Sixth Amendment guarantees defendants the right to an impartial jury. To ensure an impartial jury, the jury pool is drawn from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527-528, 95 S.Ct. 692 (1975). The systematic exclusion of a distinctive group in the community, which prevents a fair and reasonable representation of the group, violates the Constitution's fair cross-section requirement. *United States v. Rodriguez*, 581 F.3d 775, 790 (8th Cir. 2009) (citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664 (1979)).

In this case, Mr. Carter argues that there was a "clear exclusion of African Americans in the jury pool, as there was only one in approximately forty Caucasians." (#33, p. 10) He also argues that the members of the jury pool were from an area of the county where few, if any, African-Americans live.

The state Supreme Court held that Mr. Carter's conclusory allegations did not state a prima facie case of systematic racial under-representation. (#2, p. 15); *Carter*, 2010 Ark. 231. Because Mr. Carter still has not presented any evidence of a systematic exclusion of African-Americans, he has not shown that his counsel was professionally unreasonable for failing to challenge jury selection procedures at the time of trial. *Kinder*

*v. Bowersox*, 272 F.3d 532, 552 (8th Cir. 2001).  As the Arkansas Supreme Court found,

Mr. Carter has failed to show any prejudice in this regard.  *Carter*, 2010 Ark. 231.

>    4.  *Cumulative Error*

Mr. Carter alleges that cumulative error by his lawyer amounted to ineffective

assistance of counsel.  (#33, p. 10-13)  As evidence of cumulative error, Mr. Carter faults

his lawyer for failing to move for a directed verdict; for failing to object to the admission

of his BB gun at trial; for incriminating him during closing argument; for failing to object

to the jury instructions; and finally, for failing to move for dismissal on the ground that

Ms. Redding performed an invalid citizen arrest.  These claims are procedurally defaulted

and lack merit, in any event.

Before seeking federal habeas review, a state prisoner must first fairly present the

substance of each claim to each appropriate state court, thereby alerting those courts to

the federal nature of his claims and giving them an opportunity to pass upon and correct

any constitutional error.  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347 (2004); 28

U.S.C. § 2254(b) and (c).  Mr. Carter's federal claims must rely on the same factual and

legal bases he raised on in state court.  *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir.

2006) (citations omitted).

Claims raised in a federal habeas petition that were not presented in state court

proceedings and for which there is no remaining state court remedy are defaulted, and a

habeas petitioner's default will be excused only if he can demonstrate "cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991).

Mr. Carter admits that he failed to exhaust his cumulative-error claim.  (#33, p. 11) As cause for the default, Mr. Carter claims his lawyer and the Arkansas courts withheld evidence by failing to provide him with a copy of the trial transcript.

Mr. Carter filed his Rule 37 petition with the trial court on November 10, 2009. (#19-4, p. 36-42)  He filed an amended Rule 37 petition on November 24, 2009.  (#19, p. 50-59)  He did not request a transcript from the trial court, however, until November 30, 2009, after he had filed both his first and amended Rule 37 petitions.  (#19-4, p. 66-67) The trial court denied the Rule 37 petition on December 3, 2009.

Mr. Carter's argument for cause – that the Arkansas courts withheld the transcript – is not supported by the record.  He did not request a transcript until he had already presented his claims in both his first and amended Rule 37 petitions.  Mr. Carter has failed to establish cause sufficient to excuse his procedural default.

Even if he could show cause, Mr. Carter has failed to show prejudice, which is required both to overcome his procedural default and to show ineffective assistance of counsel.  A habeas petitioner cannot show prejudice through a series of errors, where none of the errors individually would meet the prejudice test.  *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002).  The Court of Appeals in this Circuit has specifically rejected

13

the cumulative error doctrine. *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006);

*Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996); *Scott v. Jones*, 915 F.2d

1188, 1191 (8th Cir. 1990). Without showing either cause or prejudice, Mr. Carter has

not overcome his procedural default.

     B.    *Actual and Factual Innocence*

   Mr. Carter's final claim for habeas relief is actual innocence. (#33, p. 2, 13-16)

"Actual innocence" means "factual innocence." *Bousley v. United States*, 523 U.S. 614,

623, 118 S.Ct. 1604 (1998); *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).

A credible claim of actual innocence requires reliable evidence, such as a credible

declaration of guilt by another, a trustworthy eyewitness account, or exculpatory scientific

evidence. *Pitts v. Norris*, 85 F.3d 348, 350 (8th Cir. 1996).

   Here, Mr. Carter has not provided any evidence of innocence. He argues that

proof of his innocence can be inferred from the contradictory testimony presented at trial.

(#33, p. 14) He also claims that Wal-Mart parking lot surveillance video – evidence that

might or might not exist – would prove his innocence. These unsupported statements fall

woefully short of the strength required to demonstrate actual innocence.

   This claim is more accurately categorized as insufficiency-of-evidence argument,

rather than one of actual innocence. Federal habeas review of an insufficient-evidence

claim is "extremely limited." *Sera v. Norris*, 400 F.3d 538, 543 (8th Cir. 2005)(quoting

*Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003)). The question is not whether

14

this Court believes the evidence at trial established guilt beyond a reasonable doubt. *Id*.

Instead, the Court must determine "whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Id*. (quoting *Jackson v. Virginia*, 443

U.S. 307, 318-19, 99 S.Ct. 2781 (1979)).

   Mr. Carter raised his insufficient-evidence claim in his direct appeal with the

Arkansas Court of Appeals. *Carter*, 2009 WL 3384382. The opinion of the Court of

Appeals is not contrary to federal law, and its determination of the facts was not

objectively unreasonable. When it reviewed Mr. Carter's case, the Court of Appeals

viewed the evidence in a light most favorable to the State and considered only the

evidence that supported the verdict to determine whether the evidence supporting the

verdict was substantial. *Id*. The state appellate court evaluated whether it was "of

sufficient force and character that it will, with reasonable certainty, compel a conclusion

one way or another." *Id*. citing *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006).

   The test applied by the Arkansas Court of Appeals, which is based on state law,

does not run counter to the reasoning or holding of the United States Supreme Court in

*Jackson*, *supra*. See *Mitchell v. Esparza*, 540 U.S. 12, 14, 124 S.Ct. 7, 10, (2003)(holding

the state court need not cite to, or even be aware of, applicable United States Supreme

Court opinions, as long as "neither the reasoning nor the result of the state-court decision

contradicts them"). Mr. Carter does not contend the United States Supreme Court has

addressed a case with facts that are "materially indistinguishable" from those involved here. The decision of the Arkansas Court of Appeals regarding the sufficiency of the evidence was not "contrary to" applicable United States Supreme Court law under 28 U.S.C. § 2254(d)(1).

To show an unreasonable determination of the facts, Mr. Carter has the burden of rebutting the state court's presumptively correct factual findings by clear and convincing evidence. *Sera*, 400 F.3d at 543 (citing 28 U.S.C. § 2254(e)(1)). He has not come forward with clear and convincing evidence to rebut either the jury's or the Court of Appeals's factual findings. To the contrary, the state court findings are supported by substantial evidence, including testimony of multiple eyewitnesses.

Mr. Carter argues that the testimony was contradictory and did not establish aggravated robbery. (#33, p. 13-14) When denying Mr. Carter's motion for directed verdict, the trial judge found that the evidence created a question for the jury. (#19-2, p. 36-37) The Arkansas Court of Appeals found that Ms. Redding's testimony established the threat to the victim, while there was substantial evidence to prove theft. *Carter*, 2009 WL 3384382 at *2. It is the fact-finder, not this Court, that must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Sera*, 400 F.3d at 543 (citing *Jackson*, 443 U.S. at 318-319).

A thorough review of the record shows that a rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. *Jackson*,

443 U.S. at 318-19.  Accordingly, Mr. Carter is not entitled to habeas relief on his sufficiency of the evidence claim.

Mr. Carter also argues his innocence based on his alleged "illegal detention" and "kidnaping" at the hands of Ms. Redding.  (#33, p. 14-15)  This argument strains credulity.  Ms. Redding was the victim in this case.  The fact that Mr. Carter successfully fled the scene shows there was no detention or kidnaping.  Even if this Court were to indulge the claim that Ms. Redding illegally detained or kidnaped Mr. Carter, this would not be a basis for habeas relief.  Since 1886, the Supreme Court has held that neither the Constitution nor laws nor treaties of the United States protect an individual who was brought within the jurisdiction of the court by violence, force, fraud, or forcible abduction from prosecution.  *Ker v. Illinois*, 119 U.S. 436, 444, 7 S.Ct. 225 (1886); *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509 (1952); *United States v. Alvarez-Machain*, 504 U.S. 655, 670, 112 S.Ct. 2188 (1992).

**VI.    Conclusion:**

Petitioner Edward Lee Carter has provided no lawful basis for this Court to issue the writ of habeas corpus he seeks.  For that reason, this Court recommends that the District Judge DENY the petition and DISMISS Edward Lee Carter's Petition for Writ of Habeas Corpus, with prejudice.

DATED this 15th day of September, 2011.

_____
UNITED STATES MAGISTRATE JUDGE